IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division


DENIS SPRADLIN,                    )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )    Civil Action No. 1:10cv1248
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of                    )
Social Security,                   )
                                   )
        Defendant.                 )


MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), Denis Spradlin ("plaintiff")
seeks judicial review of the final decision of the Commissioner
of Social Security ("defendant") denying plaintiff's claim for
disability insurance benefits ("DIB") under Title II of the
Social Security Act ("SSA" or "the Act"), 42 U.S.C. §§401-434.
Specifically, plaintiff brings this action to review the decision
of the Commissioner of Social Security that plaintiff is not
disabled and thus not entitled to disability insurance benefits
("DIB").  The record has been filed, and the case is now before
the Court on cross-motions for summary judgment.

In his Motion for Summary Judgment, plaintiff contends the
Administrative Law Judge's ("ALJ") decision should be reversed
because: the final decision is unsupported by substantial
evidence and erroneous as a matter of law.  By contrast,

1

defendant urges the Court to uphold the denial of plaintiff's DIB because substantial evidence exists in the record to support the ALJ's decision that plaintiff was not disabled within the meaning of the Act, and because the ALJ applied the correct legal standards in reaching the decision.

## I. PROCEEDINGS

On July 22, 1999, plaintiff filed an application for DIB alleging inability to work due to back pain since May 7, 1998. (R.68-70; 87-88). The Commission denied plaintiff's application on September 21, 1999 (R.44-45) and again on February 9, 2000. (R.49-51). On November 30, 2000, Administrative Law Judge Talbot in Charleston, South Carolina held an administrative hearing. (R.24-40). On May 12, 2001, ALJ Talbot issued a decision finding that plaintiff is not entitled to DIB. (R.13-23). On January 10, 2002, the Appeals Council declined to review ALJ Talbot's decision. (R.5-6).

Plaintiff subsequently filed the three actions in federal court. On February 22, 2005, Judge Henry Floyd of the United Stated District Court for the District of South Carolina adopted the Report and Recommendation of Magistrate Judge Thomas Rogers, III recommending that plaintiff's case be remanded for further consideration of the testimony of Dr. Forrest and plaintiff's subjective pain assessment. (R.318-320;336-337). On November 9, 2005 (R.376-399), ALJ Talbot held a second hearing and again

denied plaintiff's claim on December 20, 2005. (R.361; 364-373).
On April 13, 2006, the Appeals Council declined to review ALJ
Talbot's determination. (R.291-294).

Meanwhile, on March 22, 2006, plaintiff filed a second
request for judicial review in the United States District Court
for the District of South Carolina. (R.480). On February 26,
2007, Magistrate Judge William M. Catoe recommended that the
Commissioner's decision be reversed and benefits awarded to
plaintiff due to several procedural failures. (R.482-498).
Specifically, Judge Catoe found that the residual functional
capacity evaluation failed to take into account plaintiff's stand
and walk restriction, his sit/stand limitation, and the effect of
his illiteracy. (R.492). Judge Catoe also noted the failure to
fully evaluate plaintiff's subjective pain complaints. (R.497).
The Commissioner objected to Judge Catoe's Report and
Recommendation on the basis that remand was a more appropriate
remedy. (R.427, 478). The Judge Cameron McGowan Currie of the
United States District Court for the District of South Caroline
agreed with the Commissioner, and issued an Order ("the Order")
remanding for further proceedings to correct these procedural
errors. (R.427-430).

In the meantime, plaintiff began residing with his mother in
Virginia. (R.545). On March 28, 2008, a third administrative
hearing was held in Richmond, Virginia before ALJ Drew Swank.

(R.540-581). On April 25, 2008, ALJ Swank denied plaintiff's claim. (R.412; 415-423). On August 30, 2010, the Appeals Council declined to review the decision, thereby rendering the ALJ's decision final. (R.400-403). Pursuant to 42 U.S.C. §405(g), plaintiff exhausted his administrative remedies. On November 3, 2010, plaintiff filed the instant suit in the Eastern District of Virginia challenging ALJ Swank's decision. (Dkt. 1).

## II. FACTS OF RECORD

### A. Plaintiff's Personal Background

Plaintiff was born July 16, 1962. (R.68). He now resides in Prince William County, Virginia with his mother. (R.545). Plaintiff graduated high school, where he attended a special education program for the learning disabled. (R.73-74). Plaintiff is illiterate, reading at a second to fourth-grade level. (R.421, 122-125). For most of his adult life, plaintiff worked as a carpenter and foreman doing residential construction. (R.75). On May 7, 1998, at age 36, plaintiff suffered a workplace injury to his lower back when lifting a section of a wall. (R.143; 68). Plaintiff received a settlement pursuant to the South Carolina Workers' Compensation Act. (R.81-82).

Plaintiff's date last insured ("DLI") is December 31, 1998. (R.417). Thus, to qualify for DIB, plaintiff was required to show disability prior to that date. 42 U.S.C. §423(a)(1)(A), (c)(1)(B); 20 C.F.R. §404.131.

4

<u>B. Plaintiff's Medical Background</u>

Plaintiff was diagnosed with degenerative disc disease, which has caused him chronic back pain, but has not required surgery. (See R.9-11, 229-85,557).

<u>1. Carolina Spine Institute</u>

From 1998 through 1999, Doctors Forrest, Netherton and Poletti of the Carolina Spine Institute observed and treated plaintiff's injury. (R.247-266).

*A) Dr. Forrest*

On August 13, 1998, plaintiff began seeing Dr. Forrest at the Carolina Spine Institute. (R.264-266). Dr. Forrest observed muscular tenderness and tightness in plaintiff's lower lumbar region. (R.265). Dr. Forrest stated "[t]here is no other significant tenderness and his back flexibility is actually normal within limits" and "there is no weakness in the lower extremities." (R.265). Dr. Forrest also noted that plaintiff had a heavy job and that "he has been released back to light duty work although no light duty work is available for him apparently." (R.265).

On August 14,1998, Dr. Forrest referred plaintiff for an MRI of his lumbar spine that indicated right foraminal disc herniation at L3-4 and left foraminal disc bulge at L2-3.

(R.219-20)[1].  On August 17, 1998, Dr. Forrest performed an

epidural steroid injection of the right L3-4 lumbar spine.

(R.141).  Plaintiff tolerated the procedure well. (R.141,148).

Again on August 31, 1998, plaintiff had an epidural steroid

injection, and responded well. (R.151,158).

On September 23, 1998, Dr. Forrest reported that plaintiff's

"flexibility is excellent" and observed "no weakness in the

extremities." (R.259).  He advised plaintiff to advance to "more

rigorous strengthening." (R.259).

On October 23, 1998, Dr. Forrest noted that plaintiff's

chronic pain is effected by his work, but that "he is a carpenter

and it is not easy for him to switch professions." (R.258).

On June 23, 1999, Dr. Forrest issued a report stating:

> With regard to work capabilities for Mr. Spradlin
> first I will say that he gave an extremely good
> effort with his functional capacity evaluation. He
> had no non-organic signs present, and passed 96% of
> his validity criteria (I can't recall any patient
> doing better with regard to validity testing.) He
> demonstrated capability for lifting up to
> approximately thirty (30) pounds.  However, bending
> activity, according to the functional capacity
> evaluation should be entirely avoided.  Taking into
> consideration Mr. Spradlin's clinical status, as well
> as his functional capacity evaluation, I would alter
> and have the following recommendations for his
> restrictions: I would limit his lifting maximum to
> thirty (30) pounds if done just several times per
> day; maximum lifting on an occasional basis should be
> fifteen (15) pounds; and I would have no more than
> five (5) pounds lifting frequently. Bending and

_____

[1]A follow-up MRI referred by Dr. Netherton in April 1999
indicated no significant change. (R.217-18).

twisting activities at the waist should be avoided
entirely. Also, I would have him avoid any kneeling
and crawling; squatting can be done occasionally. He
would need to be allowed to sit from standing and
stand from sitting on an as needed basis. I suspect
that this might be as frequently as every twenty (20)
to thirty (30) minutes. Overall, his ability to stand
in a workday would be limited to about two (2) to
three (3) hours total. Taking all this into
consideration, Mr. Spradlin's work capabilities are
at a sedentary level at most. (R.249)

*B) Dr. Netherton*

On December 30, 1998, Dr. Netherton performed an epidural

catheterization procedure and diagnosed plaintiff with lumbar

disc displacement and lumbar radiculitis. (R.161-62).

On March 17, 1999, Dr. Netherton administered another

epidural cathertization procedure. (R.180). Afterwards, Dr.

Netherton reported that plaintiff was "doing well" and had "no

leg or back pain." (R.189). Plaintiff denied any loss of

sensation or strength in his lower extremities. (R.181). Also,

Dr. Netherton observed that plaintiff walked with a normal gait.

(R.181).

On June 7, 1999, Dr. Netherton noted that plaintiff had

radiating lumbar pain on leg lifts at 80 degrees, but with no

specific triggering points. (R.250). Additionally, from January

2000 through September 2001, Dr. Netherton observed no changes to

plaintiff's degenerative disc disease. (R.9-11, 279-85).

*C) Dr. Poletti*

On May 5, 1999, Dr. Poletti reported that plaintiff's MRI did not indicate that he would require surgery for his back pain. (R.253).

## 3. Mike Kelly

On May 13, 1999, Mike Kelly, a licensed physical therapist, performed a functional capacity assessment on plaintiff. (R.221-240). Mr. Kelly concluded that plaintiff "is able to work at the LIGHT-MEDIUM Physical Demand Level for an 8 hour day" and recommended a rehabilitation program. (R.221). Mr. Kelly reported a lifting restriction of thirty (30) pounds occasionally and fifteen (15) pounds frequently, to shoulder level and overhead, and carry thirty-five (35) pounds occasionally and eighteen (18) pounds frequently. (R.223). Mr. Kelly also recorded normal neurological sensation to light touch in plaintiff's back and lower extremities, as well as no pain on straight leg raising to 65 degrees while sitting, and to 60 degrees in the supine position. (R.227).

## 4. Dr. Aymond

On September 10, 1999, Dr. Aymond performed an independent medical evaluation of plaintiff's condition. (R.269). Dr. Aymond noted plaintiff's ongoing back pain and summarized his history of treatment for his back injury. (R.270-71). Dr. Aymond also observed that plaintiff walks with a normal gait. (R.270). Dr.

Aymond's diagnostic impression was "(1) multi-level disc bulging with degenerative disc disease" and "(2) subjective symptoms of right L5 and possibly S1 radiculopathy, not confirmed by electrical diagnostic studies." (R.270). Dr. Aymond recommended that plaintiff seek employment that allowed him to avoid lifting more that thirty (30) pounds occasionally, more than fifteen (15) pounds frequently, and more than five (5) to seven (7) pounds constantly. (R.270). Dr. Aymond also stated that "repetitive bending and twisting at the waist should be avoided as well." (R.270).

## C. March 28, 2008 Hearing before ALJ Swank

### 1. Plaintiff's Testimony

At the hearing, plaintiff testified to the following information: plaintiff's date of birth is July 26, 1962. He was 45 years old and lives with his mother in Garrisonville, Virginia. (R.545). Plaintiff graduated from Annandale High School in Annandale, Virginia in 1980. (R.546). After high school, plaintiff worked as a mechanic and carpenter's helper. (R.547,550). Plaintiff stated that he was normally paid in cash for his carpentry work. (R.567).

Plaintiff received a Worker's Compensation settlement of $100,000 after his back injury occurred. (R.553). Since his last job as a carpenter in 1998, plaintiff has done odd jobs. (R.550).

Specifically, plaintiff stated he had hung blinds and patched a roof. (R.550).

Regarding employment limitations, plaintiff stated his back has prevented him from going back to work. (R.554). He said that he has crushed disks, disk degenerative disease and is in "lots of pain." (R.554). Plaintiff testified that flexing to the left or right was very painful. (R.555). He also stated that he cannot read or write. (R.556).

Between May 1998 and December 1998, plaintiff stated that he took pain medication ("Somas") that made him sleep. (R.555). He was also taking a medication for inflammation that "helped a little bit." (R.560). More recently, plaintiff testified that he was no longer on prescription medication, but took Aleve and ibuprofen. (R.555-556). During the May 1998 through December 1998 period, plaintiff was going to physical therapy twice a week, which he found painful. (R.560-561). According to plaintiff, during the May-December time period, doctors imposed a bending, kneeling and twisting restriction, and instructed him not to lift more than 15 pounds. (R.561). Also, plaintiff stated that he had trouble breathing, and that he smoked between four cigarettes to a pack and half daily. (R.562).

Plaintiff affirmed that he is able to move his hands and arms without a problem. (R.556). Plaintiff stated that he can stand for forty (40) minutes before needing to sit down, and he

can sit for twenty (20) to thirty (30) minutes before needing to stand. (R.556). Also, plaintiff testified he could lift or carry between ten (10) and fifteen (15) pounds without hurting himself. (R.557-558).

Plaintiff testified that he tries to walk all the time, or twice a week. (R.557, 565). He said that no doctor had ever prescribed him a cane, walker, wheelchair, brace or splint between May 1998 and December 1998. (R.557). Plaintiff also affirmed that he had never had surgery on his back. (R.557). He testified that during December 1998 and May 1998, he was able to take care of his personal needs. (R.558).

## 2. Vocational Expert

At the hearing, the testimony of Vocational Expert Dr. Andrew Beale revealed the following information: plaintiff's former work as a carpenter is classified as heavy exertional and skilled work. (R.569-71). Plaintiff's foreman experience is medium exertional and skilled work. (R.571). Dr. Beale stated that these skills are not transferable to any other jobs. (R.571). Dr. Beale listed unskilled sedentary jobs for which English language literacy is not required including eyeglass and

eyeglass frame assembler[2], as well as sorter or inspector[3] (R.572-73). According to Dr. Beale, plaintiff's illiteracy would not affect his ability to perform these jobs. (R.573). Also, Dr. Beale stated that these jobs would allow the worker "some opportunity to change positions, so long as they could stay at the work station." (R.574). Dr. Beale clarified that these jobs would be possible for someone who needed to stand no more than ten (10) minutes every hour. (R.574). Also, when asked about options for light work that would allow an individual to change position every thirty (30) minutes, Dr. Beale stated laundry grader[4] and poultry processor[5] positions involved light work and could be performed while seated or standing. (R.575). Dr. Beale stated a laundry grader may need to bend occasionally, but that it was not an integral part of the job. (R.579). He added, "If you could do no bending whatsoever, yes sir, I don't - that would pose a significant limitation." (R.579). Dr. Beale added that

---

[2]Dr. Beale stated that 1500 such positions existed in the Virginia economy in 2000, and 62,000 in the national economy. (R.572).

[3]Dr. Beale stated that 1100 such positions existed in the Virginia economy in 2000, and 55,000 in the national economy. (R.573).

[4]Dr. Beale stated that 1700 such positions existed in the Virginia economy in 2000, and 75,000 in the national economy. (R.575).

[5]Dr. Beale stated that 1800 such positions existed in the Virginia economy in 2000, and 76,000 in the national economy. (R.575)

these jobs would be extremely difficult for someone who could not twist at the trunk at all. (R.579).

### III. APPLICABLE LAW

To be found disabled, a claimant must have:

> an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A). *See also* 20 C.F.R. § 404.1505(a).

Defendant's regulations require an ALJ to evaluate a person's claim for disability insurance benefits under a five-step sequential process (the "process"). 20 C.F.R. §§ 404.1520(a); *Reichenbach v. Heckler*, 808 F.2d 309, 311 (4th Cir. 1985). The process requires defendant to consider whether a claimant: (1) is currently engaged in substantial gainful activity[6]; (2) has a medically determinable impairment that is "severe" or a combination of impairments that is "severe"[7]; (3)

---

[6] Substantial gainful activity (SGA) is defined as work activity that involves doing significant mental or physical activities and work that is usually done for pay or profit, whether or not a profit is realized. (20 C.F.R. § 404.1572(a)-(b)) If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step. (Id.)

[7] An impairment or combination of impairments is "severe" within the meaning of defendant's regulations if the impairment significantly limits an individual's ability to perform basic work activities. An impairment is "not severe" when medical and other evidence establish only a slight abnormality or a

has an impairment that meets or equals the requirements of

a"listed" impairment;[8] (4) has the residual functional capacity[9]

to return to his past work;[10] and (5) if not, whether he can

---

combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. (20 C.F.R. § 404.1521.)  If the individual does not have a severe medically determinable impairment, she is not disabled, but if she does have a severe impairment, the analysis proceeds to the third step.

[8] A "listed" impairment is one that exists in the list and produces the associated symptoms contained in 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant can satisfy step three by showing that he has a listed impairment or that he has more than one impairment that, when combined, result in symptoms of equal severity and duration as a listed impairment.  20 C.F.R. § 404.1523.  If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement outlined in 20 C.F.R. § 404.1509, the claimant is disabled. If the impairment does not meet or equal the criteria, the analysis proceeds to the next step.

[9] As part of step four, the ALJ must determined the claimant's residual function capacity ("RFC") as outlined in 20 C.F.R. § 404.1520.  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In determining the RFC, the ALJ must consider all of the individual's impairments, including impairments that are not severe.  (20 C.F.R. §§ 404.1520(e) and 404.1545.)

[10] Past relevant work is worked performed, either as the claimant actually performed it or as it is generally performed in the national economy, within the last 15 years or 15 years prior to the date that disability must be established. The past relevant work must have lasted long enough for the individual to have learned to do the job and have been SGA.  (20 C.F.R. §§ 404.1560(b) and 404.1565.)  If the plaintiff has the RFC to do his past relevant work, he is not disabled, but if he is unable to do any past relevant work, the analysis proceeds to the next step.

perform other work in the national economy.[11] (R.14-15.)

Although the claimant bears the burden of proving disability, a

limited burden shifts to the defendant in the last step. (R.15)

In order to support a finding that the individual is not

disabled, the defendant must provide evidence that other work

exists in significant numbers in the national economy that

plaintiff can do, given plaintiff's RFC, age, education and work

experience.[12] (Id.; 20 C.F.R. §§ 404.1512(g) and 404.1560(c).

## IV. STANDARD OF REVIEW

This Court may not review defendant's decision *de novo,* but

instead must determine whether defendant's decision is supported

by substantial evidence in the record and whether defendant

applied the correct law. *Hays v. Sullivan*, 907 F.2d 1453,1456

(4th Cir. 1990); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.

1987). Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.

---

[11] In making this last determination, the ALJ must take the
individual's age, RFC, education and work experience into
account. If the individual is able to do other work, he is not
disabled. If the individual is not able to do other work and
meets the duration requirement, he is disabled. 20 C.F.R.
§404.1520(a)

[12] Defendant may meet the burden of showing other jobs
through use of the Medical-Vocational Guidelines of the
regulations or through the testimony of a vocational expert. (20
C.F.R. Part 404, Subpart P, Appendix 2.) Where plaintiff's RFC
is affected by factors which may not be reflected in the criteria
of the Medical-Vocational Guidelines, the ALJ may need to obtain
evidence from a VE to ascertain specific jobs which would
accommodate the individual's RFC.

*Richardson v. Perales*, 402 U.S. 389, 401(1971). It is more than a scintilla but less than a preponderance. *Hays*, 907 F.2d at 1456. In reviewing for substantial evidence, the Court does not weigh conflicting evidence, make credibility determinations, or substitute its judgement for that of the ALJ. The correct law to be applied includes the SSA, its implementing regulations, and controlling case law. *See Coffman*, 829 F.2d at 517-518. With this standard in mind, the Court next evaluates the ALJ's findings and decision.

## V. ALJ SWANK'S FINDINGS AND DECISION

On April 25, 2008, ALJ Swank issued an opinion denying DIB upon his finding that plaintiff is not disabled under 216(i) and 223(d) of the Social Security Act because plaintiff is able to perform "light work". 20 C.F.R. §404.1567(b)[13]. (R.418,423).

ALJ Swank's analysis followed a five-step sequential evaluation process pursuant to 20 C.F.R. §404.1520(a) that took into account plaintiff's subjective complaints, the nature of his medical care, the findings on physical examinations, and the plaintiff's admitted work and daily activities. (R.416, 421).

ALJ Swank found that plaintiff has not engaged in substantial gainful activity during the period of the alleged onset date, May 7, 1998 through his date last insured, December

―――――――――――

[13]Light work is defined as work that requires lifting no more than twenty (20) pounds at a time with frequent lifting or carrying of objects weighing up to ten (10) pounds.

31, 1998. (R.417, Findings 1-2).  ALJ Swank then found that
plaintiff had the following severe impairments: degenerative disc
disease of the lumbar spine and lumbosacral radiculitis.  (R.417,
Finding 3).

Next, ALJ Swank found that through the date last insured,
plaintiff did not have an impairment or combination of
impairments that met or medically equaled one of the listed
impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20
C.F.R. 404.1520(d), 404.1525 and 404.1526). (R.418, Finding 4).

As to plaintiff's residual functional capacity, plaintiff
was able to perform light work, except that plaintiff "needed to
be able to change position every 30 minutes or so and he could
not perform jobs that require literacy." (R.418, Finding 5).  ALJ
Swank found plaintiff's testimony as to the intensity,
persistence, and limiting effects of his impairment was not
credible because it was "out of proportion to the medical
evidence."  (R.419). In particular, ALJ Swank found that
plaintiff's testimony about daily activities and evidence of his
excellent back flexibility in the medical record contradicted the
testimony of Dr. Forrest and Dr. Aymond as to plaintiff's ability
to bend or twist. (R.420-421). Also, ALJ Swank took into account
that plaintiff admitted to performing daily activities, and to
returning to light work after only a short period of time after
the onset of the impairment. (R.419).  ALJ Swank found that

medical records showed that conservative treatments such as series of injections, a TENS unit, and medications worked for plaintiff's pain. (R.419). Thus, after considering plaintiff's age, education, work experience, and RFC, as well as the testimony of the vocational expert, ALJ Swank found that there was a significant number of light and sedentary jobs in the national economy that plaintiff could perform with the limit of "lifting and carrying weights of up to 10 pounds frequently and 20 pounds occasionally...and needed the opportunity to change positions every 30 minutes or so." (R.422, Finding 10). Therefore, the ALJ concluded that plaintiff is "not disabled" and can perform a significant number of light and sedentary jobs. (R.423, Finding 11).

## A. ALJ Swank's Assessment of Dr. Forrest's Testimony

ALJ Swank determined that "minimal weight is afforded to the opinion of Dr. Forrest..." as to plaintiff's "lifting, carrying, standing and other postural limitations." (R.420-21). Plaintiff argues that there is not substantial evidence to support the ALJ Swank's decision to assign "minimal weight" to the testimony of Dr. Forrest. According to plaintiff, Dr. Forrest is plaintiff's treating physician, and accordingly must be "given great weight and may be disregarded only if there is persuasive contrary evidence." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1991).

The undersigned finds that ALJ Swank properly considered all relevant medical evidence, including the opinion of Dr. Forrest and plaintiff's subjective pain complaints, in concluding that plaintiff could perform light-work jobs. (R.420). ALJ Swank's conclusion is supported by the opinion of Mr. Kelly, who opined that plaintiff could perform light to medium work. (R.221). Moreover, Dr. Aymond observed that plaintiff could lift up to thirty (30) pounds occasionally and fifteen (15) pounds frequently. (R.270). Thus, ALJ Swank reasonably determined that Dr. Forrest's opinion that plaintiff could only lift fifteen (15) pounds occasionally and five (5) pounds frequently, was against the weight of the evidence. (R.249,420).

Plaintiff further contends that ALJ Swank failed to give adequate consideration to Dr. Forrest's opinion that plaintiff should avoid "bending and twisting activities at the waist."[14] (R.249). As to Dr. Forrest's statement that plaintiff should avoid twisting and bending, ALJ Swank gave specific reasons for assigning minimal weight to Dr. Forrest's opinion, including that Dr. Forrest's report contradicted medical evidence of plaintiff's excellent back flexibility and plaintiff's own statements about

---

[14]Plaintiff concedes that ALJ Swank correctly assessed plaintiff's ability to walk, stand, lift and need to shift positions.

his abilities in daily life and admitted work activity.[15] (R.420-421). Moreover, ALJ Swank found that plaintiff's complaints of totally disabling pain were contradicted by his testimony about daily activities, Dr. Netherton's report of successful pain management using the epidural injections, Dr. Forrest's recommendation that plaintiff continue with more vigorous physical therapy, and Drs. Netherton and Aymond's observations that plaintiff walked with a normal gait. In light of these inconsistencies, ALJ Swank had discretion to assign minimal weight to Dr. Forrest's opinion about plaintiff's bending and twisting limitation. 20 C.F.R. §404.1527(d).

Also, in keeping with Dr. Forrest's opinion regarding plaintiff's need to change position, ALJ Swank addressed this, as well as plaintiff's illiteracy, in his hypothetical to Dr. Beale. Dr. Beale named sedentary jobs that plaintiff could perform with these restrictions.

_____

[15]ALJ Swank stated: "The bending and twisting limitations noted in the functional capacity evaluation and the opinions of Drs. Forrest and Aymond are inconsistent with the claimant's normal to excellent back flexibility described in treatment records prior to his date last insured. Dr. Forrest's opinion with regard to the ability to alternate positions is consistent with the claimant's subjective complaints, but the lifting, carrying, standing and other postural limitations he identified is inconsistent with the claimant's activities of daily living, his admitted work activity, the functional capacity evaluation and the objective findings on physical examinations...Minimal weight is afforded the opinion of Dr. Forrest." (R.420-421).

B. ALJ Swank's Compliance with District Court Order

Plaintiff argues that ALJ Swank ignored the March 28, 2007 Order of the United States District Court for the South Carolina ("the Order")(R.430). According to plaintiff, the Order instructed ALJ Swank to defer to the opinion of Dr. Forrest. Plaintiff insists that ALJ Swank thereby violated the law of the case doctrine, which is the principle that courts shall generally refuse to reopen issues that have already been decided. *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800,817 (1988).

The undersigned disagrees with plaintiff's characterization of the Order. The Order merely instructs the Commissioner to correct certain procedural errors noted in Judge Catoe's Report and Recommendation. (R.430). ALJ Swank corrected the errors of the previous administrative court in compliance with the Order by assessing plaintiff's stand and walk limitation, sit/stand restriction, illiteracy, subjective complaints, and the opinions of Mr. Kelly, Drs. Forrest, Netherton, and Aymond. Therefore, as explained above, ALJ Swank's conclusions were reasonable in light of the evidence.

## VI.  RECOMMENDATION

For the reasons set forth, the undersigned Magistrate Judge finds ALJ's decision is supported by substantial evidence and does not contain legal error. Therefore, the Motion for Summary

Judgment by defendant, Michael J. Astrue, Commissioner of Social

Security, shall be GRANTED, and the Motion for Summary Judgment

by plaintiff, Dennis Spradlin, shall be DENIED.  An appropriate

Order shall be issued.


                              _____/s/_____
                              THERESA CARROLL BUCHANAN
                              UNITED STATES MAGISTRATE JUDGE


May 9, 2011
Alexandria, Virginia